UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v.   : | File No. 1:14-cr-83-jgm-1, 3, 4 |
| : | |
| KASSIM MARSH, ALIQUAN : | |
| UMSTEAD and JAHLIL MARSH, : | |
| : | |
| Defendants. : | |
| _____ : | |

RULING ON MOTIONS TO SUPPRESS AND TO DISMISS
(Docs. 126, 130, 131)

I.   Introduction

Defendants Kassim Marsh, Aliquan Umstead, and Jahlil Marsh (collectively, "Defendants") are charged in a second superseding indictment with conspiracy to distribute heroin and cocaine and distribution of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C) in this multi-defendant case. (Doc. 18 (Counts 1, 3-4, 7, 10, 13-15, 17).) Umstead moves to suppress evidence obtained during a September 23, 2013 vehicle stop on Interstate 91 near Hartland, Vermont, and to dismiss the indictment or, in the alternative, suppress evidence and exclude testimony regarding a May 27, 2014 search of Adam Brown's house, arguing his Fourth, Fifth, and Fourteenth Amendment constitutional rights were violated. (Doc. 126.) Kassim Marsh and Jahlil Marsh joined Umstead's motions and incorporated his arguments. (Docs. 130, 131.) The government opposes the motions. (Docs. 135, 140, 143.) The Court held an evidentiary hearing on January 21, 2016, and heard testimony from Vermont State Police ("VSP") Sergeants Michael Studin and Eric Albright. Umstead and the government filed additional briefing following the hearing. (Docs. 176, 177.)

For the reasons stated below, the Court denies Defendants' motions.

II.   Background

The Court finds the following facts from the evidence presented at the January 21 hearing, and from other documents submitted as evidence by the parties, including a cruiser camera video. At approximately 5:40 in the evening on September 23, 2013, Sergeant Studin stopped a car he had observed cross the white fog line for almost ten seconds on a straight stretch of Interstate 91. Studin has been a VSP Sergeant since July 2003. He inquired if the female driver was sleepy and observed a male passenger in the front, and four male passengers in the back. He requested her paperwork and identification from the passengers; he never received a current insurance card for the vehicle or identification of the occupants other than the driver's license and Umstead's Vermont Human Resources Services identification card--a card Studin had not before encountered. Umstead explained the card was issued to him upon his release from jail in Vermont.

Sergeant Studin testified he observed smoke rising from beneath a backseat passenger that smelled of clove and burnt marijuana and marijuana flake on the envelope the frontseat passenger retrieved from the glovebox. He asked how much marijuana was in the car; the driver and front passenger answered none and a backseat passenger answered it was all gone because they had smoked it.

The passengers identified themselves as Tysheed William, Khamil Marsh, Jahlil Marsh, Kassim Marsh, all from Newark, New Jersey, and Aliquan Umstead, from Springfield, Massachusetts. The occupants gave varying responses regarding their destination, including a friend's house and a hotel in South Burlington. They were traveling from Putney to Burlington because Khamil Marsh had a hearing for a possession of heroin charge in state court at 2:30 on September 24. Sergeant Studin found it odd the others would be traveling to the court hearing for support and that they were traveling the day before so they may incur a hotel expense.

Sergeant Studin advised the driver he would be issuing her a warning.  She agreed to exit the car and accompany him to his cruiser.  While in the cruiser, she told Sergeant Studin she was not staying in Burlington and would be returning to Brattleboro, Umstead had been arrested in Brattleboro in May for possession of cocaine, and the passengers did not have clothing or bags in the car.  She refused consent to search the vehicle.

In under five minutes, two other troopers, Sergeant Eric Albright and Trooper Dustin Robinson, had arrived to assist with the traffic stop.  Sergeant Albright has been a VSP trooper for 21 years.  Sergeant Studin told Sergeant Albright the names of the occupants and he recognized William's name from a prior encounter.  Sergeant Albright inquired whether he had a tattoo of red lips on his neck which Sergeant Studin verified.  In the prior encounter, the officers had determined his real name to be Tyrone Cromer.  Sergeant Studin ordered him to exit the vehicle and he confessed to providing a false name, explaining he was on probation in New Jersey and was not allowed to leave the state.

The officers contacted Megan Sheridan of the Vermont State Police Drug Task Force because Sergeant Albright, who regularly interacted with her as part of his regular duties, knew she had been investigating the five men for approximately six months.  She informed them that, because of the ongoing investigation, she did not want them arrested except for Cromer, who had provided a false name, but they should search the car.  Sergeant Studin requested and Trooper Robinson performed an exterior scan of the vehicle with his canine that did not result in a positive alert.  Sergeant Studin decided to seize the car and apply for a search warrant.  He asked for and received permission to search the passengers, finding two pieces of a marijuana blunt in Umstead's pocket with the same odor he smelled earlier in the stop.  Sergeant Studin arrested Cromer and transported him to the Rockingham State Police barracks; the others were given a courtesy ride to a gas station.

At the garage in the barracks, Trooper Robinson's canine positively alerted to the front driver's door and the right rear quarter panel. Based on Sergeant Studin's affidavit, a state court judge issued a warrant. A search of the car revealed a small bag of marijuana in the sunglass compartment, a small piece of smoked blunt under the driver's seat, five cell phones, and over 1,000 bags of heroin, Cromer's New Jersey identification card, and cash in other bags in the trunk.

III.  Discussion

    A.  Motions to Suppress

Defendants maintain that all evidence obtained from the September 23, 2013 traffic stop should be suppressed because police lacked reasonable suspicion to extend the stop, to detain and arrest them[1], or to seize and search the vehicle. See Docs. 126, 176.

The initial burden of production and persuasion generally rests upon the defendant at a suppression hearing. United States v. Arboleda, 633 F.2d 985, 989 (2d Cir. 1980). "The defendant must present a prima facie case showing a Fourth Amendment violation, i.e., that a government official, acting without a warrant, subjected her to either an arrest or a search and seizure." United States v. Bayless, 921 F. Supp. 211, 213 (S.D.N.Y. 1996) (citing cases), aff'd, 201 F.3d 116 (2d Cir. 2000). "[O]nce [the defendant] establishes a basis for his motion, the burden rests upon the [g]overnment to prove, by a preponderance of the evidence, the legality of the actions of its officers." United States v. Wyche, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004).

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to vehicle stops. Whren v. United States, 517 U.S. 806, 809-10 (1996). Probable cause or reasonable

---

[1] While Umstead's motion argues police lacked a reasonable suspicion to detain and arrest him, and the other Defendants joined his motion, the evidence presented at the hearing supports a finding that only Cromer was arrested.

4

suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for a law enforcement officer to make a traffic stop. United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009). A law enforcement officer may also "briefly detain a person if the officer has a reasonable suspicion 'that criminal activity may be afoot.'" United States v. Bayless, 201 F.3d 116, 132 (2d Cir. 2000) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)); see also United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) ("The circumstances necessary to justify a Terry stop are a reasonable basis to think that the person to be detained 'is committing or has committed a criminal offense.'" (quoting Arizona v. Johnson, 555 U.S. 323, 326 (2009))). Reasonable suspicion should be based on specific and articulable facts objectively indicating unlawful conduct. Id. at 132-33 (internal citations omitted). The standard is not high and is less than probable cause. Bailey, 743 F.3d at 332. The Court considers the totality of the circumstances and evaluates those circumstances "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." Bayless, 201 F.3d at 133 (internal citations omitted).

Defendants do not specifically challenge the validity of the traffic stop. Though law enforcement acted without a warrant in stopping the vehicle, the traffic stop was justified because Sergeant Studin had a reasonable suspicion of the traffic violation of crossing over the fog line for almost ten seconds. See Vt. Stat. Ann. tit. 23, § 1038.

Sergeant Studin could briefly detain the occupants of the vehicle because, under the totality of the circumstances, he had a reasonable suspicion based on articulable facts that Cromer had provided a false name and that the vehicle occupants may be in possession of drugs. Sergeant Studin had reasonable suspicion, based on specific, articulable facts, that Cromer had provided false information because Sergeant Albright knew Cromer had used the alias William before and Cromer admitted he provided a false name when challenged. The troopers knew of Sheridan's investigation

of the men and that they were suspected of drug trafficking, knew of prior and current drug charges against some of the men, and Sergeant Studin observed smoke, smelled burnt marijuana, and saw marijuana flake in the car. Bayless, 201 F.3d at 133 ("reasonable suspicion inquiry must ask if the conduct would appear suspect to one familiar with the practices of narcotics couriers"). The circumstances of the travel were also suspicious to Sergeant Studin because he had not before encountered a group of individuals accompanying another to a court date, he was told the men were without luggage though traveling overnight, and had originated in Putney though they were from out of state. The law does not demand all possible innocent explanations be eliminated before conduct can be considered as part of the totality of circumstances supporting a reasonable basis to believe criminal activity may be afoot. Bailey, 743 F.3d 333; see also United States v. Padilla, 548 F.3d 179, 187 (2d Cir. 2008) ("Terry recognized that a series of facts, each of them perhaps innocent in itself, can when taken together warrant further investigation." (internal quotation marks and citation omitted)). Accordingly, the Court determines Sergeant Studin's initial stop and detention of Defendants was reasonable under the Fourth Amendment.

Even if articulable suspicion supports a Terry investigatory stop, however, the Fourth Amendment demands the scope and duration of the detention be reasonable. To assess whether a detention is too long or intrusive to be justified, courts "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." Bailey, 743 F.3d 336 (internal quotation marks and citation omitted). Defendants principally rely on Rodriguez v. United States, 135 S. Ct. 1609 (2015), in support of the argument they were subjected to prolonged detention. (Doc. 126 at 5-7.) The Rodriquez Court noted a traffic stop may not be prolonged beyond determining whether to issue a ticket, and conducting ordinary inquiries incident to the traffic stop, absent reasonable suspicion. Id. at 1615.

Here, as noted above, Sergeant Studin had reasonable suspicion Defendant Cromer had provided false information.  He sought to confirm or dispel his suspicion Cromer provided false information by confronting him.  Cromer admitted he provided a false name and admitted his real name.  Beyond a Terry stop, law enforcement may make a warrantless arrest where there is probable cause to believe a crime has been or is being committed.  United States v. Delossantos, 536 F.3d 155, 158 (2d Cir. 2008).  Probable cause exists where law enforcement has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Id.  Because Cromer admitted he provided a false name, Sergeant Studin had probable cause to believe Defendant had provided a false name, a crime in Vermont.  See Vt. Stat. Ann. tit. 13, § 1754(a).  Once an officer determines there is probable cause to make an arrest, the officer may search the entire passenger compartment to ensure safety and preserve evidence.  Thornton v. United States, 541 U.S. 615, 623 (2004).  When, as here, the arrestee is a recent occupant of the vehicle, an officer may search the vehicle incident to the arrest.  Id. at 623-24.  Notwithstanding this authority, Sergeant Studin obtained a warrant prior to searching the vehicle.

Sergeant Studin also had reasonable suspicion of the possession and trafficking of narcotics.  Defendants argue this suspicion was dispelled when Trooper Robinson's narcotics dog did not positively alert.  (Doc. 126 at 7-8.)  While the exterior dog sniff was one means of investigation likely to confirm or dispel the suspicion of drug possession, under the totality of the circumstances, the officers were justified in detaining the vehicle to seek a search warrant.  Sergeant Studin had smelled and seen marijuana in the car, and later found marijuana in Umstead's pocket, the vehicle occupants admitted having recently smoked marijuana and gave varying responses about their travel, and the officers were aware of the ongoing investigation of the passengers for drug trafficking.  Accordingly,

the investigation was conducted diligently and the scope and duration of the stop was reasonable under the Fourth Amendment.  United States v. Foreste, 780 F.3d 518, 523 (2d Cir. 2015) ("A traffic stop may be extended for investigatory purposes if an officer develops a reasonable suspicion of criminal activity supported by specific and articulable facts.").

      B.      Motions to Dismiss

Defendants maintain the indictment should be dismissed, or, in the alternative, that all evidence obtained from, and testimony regarding, the May 27, 2014 search of Adam Brown's house should be suppressed and excluded, because the prosecution is based on outrageous government conduct in violation of their right to due process of the law under the Fifth and Fourteenth Amendments.  (Docs. 126, 176.)  One of the officers who participated in the investigation of Defendants and the search of Brown's house was former Colchester Police Detective Tyler Kinney, who, in November 2014, was exposed as a drug addict.  He was prosecuted and pled guilty to stealing from the Colchester Police evidence vault, transferring a firearm to a confidential informant, and distributing heroin; he awaits sentencing.  See United States v. Kinney, No. 2:14-cr-125 (Nov. 12, 2014).

The defendant bears a heavy burden of establishing outrageous government conduct. United States v. Cromitie, 727 F.3d 194, 218 (2d Cir. 2013).  The alleged government misconduct must be "'so offensive that it "shocks the conscience."'"  Id. 218-19 (quoting United States v. Chin, 934 F.2d 393, 398 (2d Cir. 1991)).

Here, Defendants have failed to carry their heavy burden.  The government asserts none of the current charges are based on Detective Kinney's work:  it did not charge the undercover drug buys supervised by Detective Kinney or possession of the heroin seized from Brown's house. Further, the search was authorized by a state search warrant that has not been challenged and the

evidence was seized by other officers. Accordingly, Defendants have not carried their heavy burden of demonstrating government conduct that shocks the conscience and therefore violates the due process clause of the Constitution. As Defendants assert, Detective Kinney and his informant were their own criminal enterprise. (Doc. 126 at 12.) As suggested by the Supreme Court, prosecution of Detective Kinney, as occurred here, is the proper remedy and not dismissing the charges against Defendants. See Hampton v. United States, 425 U.S. 484, 490 (1976) ("If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police . . . ."). Notwithstanding Defendant's assertion that "the government essentially caused the illegal activity" (Doc. 126 at 12), Detective Kinney's actions did not cause the drugs and hand guns to be present at the Brown house. Defendants motions to dismiss the indictment or in the alternative to suppress evidence from the May 27, 2014 search are denied.

IV.    Conclusion

For the above reasons, Defendants Kassim Marsh, Aliquan Umstead, and Jahlil Marsh's motions to suppress evidence and to dismiss the indictment (Docs. 126, 130, 131) are DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 7th day of April, 2016.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge